IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID STINER, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-2007 |
| | § | |
| IBM CORPORATION, | § | |
|     Defendant. | § | |

**MEMORANDUM AND ORDER**

This employment discrimination case is before the Court on the Motion for Summary Judgment [Doc. # 14] filed by Defendant IBM Corporation ("IBM"). Plaintiff David Stiner filed a Response [Doc. # 20], IBM filed a Reply [Doc. # 22], and Stiner filed a Second Response [Doc. # 23]. The Court has reviewed the full record in this case.[1] Based on this review and the application of governing legal authorities, the Court **grants** IBM's Motion for Summary Judgment.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

The facts in this case are largely undisputed. Plaintiff, an African-American male, began working for IBM in 1983 and remains an IBM employee. In July 2001,

---

[1]   IBM also filed a Motion to Strike Plaintiff's supporting evidence as not properly authenticated. Plaintiff's attorney subsequently authenticated the exhibits. The Court will consider only the admissible evidence in the record, and the Motion to Strike [Doc. # 21] is **DENIED**.

Plaintiff was assigned the Texaco account. At that time, Shahnaz Graham, a female of East Indian descent, was the Client Executive on the Chevron account.

In October 2001, Chevron and Texaco merged to form ChevronTexaco. The new company's executives with decision-making authority over purchases of IBM products and services were at the former Chevron offices in California near Graham's home.

In 2002, IBM acquired the business consulting practice held by Price Waterhouse Coopers ("PWC"), which previously had a consulting services contract with ChevronTexaco. As a result of this acquisition, former PWC employee Jim Ward remained assigned to the ChevronTexaco account as an IBM employee.

James Keenan, the Client Managing Director of the Houston Petroleum Cluster, held meetings in January 2003 to advise each of the Petroleum Cluster teams (for companies such as Exxon, Halliburton, Shell, ChevronTexaco, and British Petroleum ("BP")) that there would be staff reductions if sales targets and quotas for 2003 were not met. The overall performance of the ChevronTexaco account declined substantially during 2003. The ChevronTexaco team, as well as other Petroleum Cluster teams, were not able to make their quotas.

In July 2003, Keenan advised Plaintiff that, as a result of the declining performance, IBM would not be able to maintain both sales employees on the

ChevronTexaco account. Keenan suggested that Plaintiff contact Kim Horst on the BP account which needed an additional sales resource. Plaintiff spoke with Horst but did not move to the BP account.

Overall sales continued to decline in the Petroleum Cluster. As a result, IBM directed a headcount reduction for the ChevronTexaco and certain other accounts. Denise Thompson, a Caucasian female, left the Shell account for another position within IBM. Tom McClure, a Caucasian male, also obtained another position within IBM. William Kuzmich, a Caucasian male, was removed from the BP account and left IBM in 2004. Jim Ward, the former PWC consultant, was removed from the ChevronTexaco account and placed in a position where he provided consulting support for multiple accounts.

The ChevronTexaco team was one of the accounts required to reduce the number of sales personnel. Therefore, IBM had to choose between Plaintiff and Graham. Keenan used a Staff Reduction Worksheet on which he evaluated both employees in five relevant skill areas. Graham was rated higher than Plaintiff in all five areas. Graham had an engineering degree and had completed training to become a Certified Client Executive for ChevronTexaco. Graham also lived near and had a more positive relationship with the high-level, decision-making personnel at ChevronTexaco. Indeed,

Plaintiff did not have a security badge or building access to the ChevronTexaco offices. Keenan selected Graham as the employee to remain on the ChevronTexaco account.[2]

Plaintiff was originally given thirty days to find another position within IBM or accept a separation package. Plaintiff was later given extensions beyond the original thirty days. After approximately seventy days, Plaintiff found and accepted a new position with IBM – Market Executive for the West Region – where he continues to work today. The new position is a higher "band" on IBM's salary scale, but it is not a commissioned position. During the period of time between his removal from the ChevronTexaco account and beginning his new position on May 1, 2004, Plaintiff continued to receive full pay and benefits.

Plaintiff filed an internal appeal challenging his removal from the ChevronTexaco account. He made no reference to alleged race discrimination, relying instead on his belief that IBM should not have selected him for the headcount reduction. Plaintiff's complaint was investigated internally, and IBM concluded that he had been treated fairly.

---

[2] The ChevronTexaco account remained financially challenging due to projects being delayed, reduced in scope or cancelled. *See* Graham Declaration, ¶ 12. As a result, Graham voluntarily left the account in 2005 and moved to another position within IBM. *Id.* There is no evidence that Plaintiff applied for the ChevronTexaco position after Graham left.

On September 3, 2004, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that he was discriminated against based on his race in two respects. Plaintiff claimed that the decision to remove him from the ChevronTexaco account was based on race. Plaintiff also alleged that it was race discrimination for IBM not to assign him to another commissioned sales position. The EEOC issued its Right to Sue on March 10, 2005, and this lawsuit followed. In addition to the two matters included in the EEOC charge, Plaintiff included in his lawsuit a number of allegations of race discrimination over a period of approximately twenty years.[3]

After an adequate time for discovery, Defendant moved for summary judgment. The motion has been fully briefed and is now ripe for decision.

## II.   ANALYSIS

### A.   Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

---

[3] Plaintiff does not dispute that these incidents of alleged discrimination are untimely and unexhausted. Plaintiff correctly notes, however, that although these incidents cannot provide an independent basis for relief, they can serve as evidence in connection with the removal and failure to reassign claims.

party's case, and on which that party will bear the burden of proof at trial." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir.), *cert. denied*, 537 U.S. 824 (2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322-23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.,* 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the nonmovant only when there is an actual controversy – "that is, when both parties have submitted evidence of contradictory facts." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. *Freeman v. Texas Dept. of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004). The movant meets this initial burden by showing that the

"evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998).

If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1998)). A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. (quoting *Brenoettsy*, 158 F.3d at 911); *see also Quorum Health Resources, L.L.C. v. Maverick County Hosp. District*, 308 F.3d 451, 458 (5th Cir. 2002).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *Zucker ex rel. AIM Small Cap Growth Fund v. AIM Advisors, Inc.*, 371 F. Supp. 2d 845, 847 (S.D. Tex. 2005). "Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden at summary judgment." *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1429 (5th Cir. 1996); *see Roberson v. Alltel Information Services*, 373 F.3d 647, 654 (5th Cir. 2004). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris*, 144 F.3d at 380.

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* Fed. R. Civ. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Additionally, it is not the function of the court to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *See Complaint of Port Arthur Towing Co.*, 42 F.3d 312, 318 (5th Cir.), *cert. denied*, 516 U.S. 823 (1995); *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). In the absence of proof, the Court will not assume that the nonmovant could or would prove the necessary facts. *See Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998).

**B.     Removal From ChevronTexaco Account**

Plaintiff alleges that his removal from the ChevronTexaco account was the result of race discrimination, and he attempts to prove this allegation through indirect or circumstantial evidence. Therefore, the claim is considered under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, Plaintiff must present evidence to establish a *prima facie* case of race discrimination.

*See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003). Then the burden shifts to Defendant to articulate a non-discriminatory explanation for its decision. *Id.* The burden then shifts back to Plaintiff "to show that the defendant's proffered reason is simply a pretext for discrimination." *Id.*

In this case, Defendant challenges Plaintiff's attempt to establish a *prima facie* case of discrimination, but also articulates its non-discriminatory reason for removing Plaintiff from the ChevronTexaco account. Specifically, Defendant states, with supporting evidence, that the ChevronTexaco account could not support two commissioned sales positions and a headcount reduction was necessary. Defendant states that it selected Graham because it considered her to be better qualified than Plaintiff.

Because Defendant has articulated a non-discriminatory reason for its decision to remove Plaintiff from the ChevronTexaco account, Plaintiff must present evidence that raises a genuine issue of material fact on the issue of pretext.[4] "A genuine issue of material fact exists when evidence shows the plaintiff was 'clearly better qualified'  than" the employee who was selected to remain in the position.[5] *Nichols v. Loral*

---

[4] The Court assumes without deciding that Plaintiff can establish a *prima facie* case of discrimination of the basis of his race.

[5] Plaintiff correctly notes that he is not required to show that "the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face." The United States
(continued...)

*Vought Systems Corp.*, 81 F.3d 38, 42 (5th Cir. 1996); *see also Manning*, 332 F.3d at 882. "To establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice." *Nichols*, 81 F.3d at 42.

It is clear that Plaintiff genuinely believes that he should not have been removed from the ChevronTexaco account. He presents no evidence, however, that IBM could retain both commissioned sales positions assigned to the ChevronTexaco account or that he was "clearly better qualified" than Graham. It is undisputed that Graham had an engineering degree, was already at a higher salary band than Plaintiff, had completed training to become a Certified Client Executive for the ChevronTexaco account, had an excellent working relationship with the ChevronTexaco account decision-makers, and had access to the ChevronTexaco offices.

It is also undisputed that Graham was evaluated higher than Plaintiff on all five skill areas in the Staff Reduction Worksheet that Keenan used to make his selection. Plaintiff does not present evidence, or even argue, that the evaluation was inaccurate or in any way motivated by racial animus on Keenan's part. Instead, Plaintiff argues that the evaluation was subjective and, therefore, suspect. "The mere fact that an

---

5    (...continued)
Supreme Court rejected this standard in *Ash v. Tyson Foods, Inc.*, 126 S. Ct. 1195, 1197 (2006). The Fifth Circuit, however, still requires the Plaintiff to show that he is "clearly better qualified." *See Manning*, 332 F.3d at 882.

employer uses subjective criteria is not, however, sufficient evidence of pretext." *Manning*, 332 F.3d at 882.

Plaintiff has not presented evidence that he was clearly more qualified than Graham to remain on the ChevronTexaco account. He has not presented evidence to raise a genuine issue of material fact that Defendant's proffered reason for removing him from that account was a pretext for race discrimination. As a result, Defendant is entitled to summary judgment on this claim.

### C. Failure to Select Plaintiff for Other Commission Positions

Plaintiff claims that IBM's failure to select him for a different commissioned sales position was the result of race discrimination. Plaintiff claims that he inquired about several positions, that his inquiries were favorably received, but he was not selected for the positions. Plaintiff testified in his deposition that his "gut" feeling is that a second line manager, Craig Hodges, must have impeded his job search because he interviewed for jobs and had positive conversations until the hiring manager contacted Plaintiff's management. *See* Stiner Depo., Ex. 4 to Plaintiff's Response, pp. 81-82. Other than his "gut" feeling and his failure to receive a commissioned sales position, Plaintiff offers no evidence that Hodges or anyone else with IBM caused him

not to receive a commissioned sales position because of race discrimination.[6] Plaintiff's subjective belief is inadequate to avoid summary judgment.

## III.  CONCLUSION AND ORDER

Plaintiff's evidence fails to raise a genuine issue of material fact to support his race discrimination claims regarding the ChevronTexaco position or the commissioned sales positions for which he was not selected.  As a result, IBM is entitled to summary judgment, and it is hereby

**ORDERED** that IBM's Motion for Summary Judgment [Doc. # 14] is **GRANTED**.  The Court will issue a separate final order.

SIGNED at Houston, Texas, this **28th** of **April, 2006**.

_____
Nancy F. Atlas
United States District Judge

---

[6] Plaintiff does not attempt to compare himself with persons selected for any of the commissioned sales positions for which he interviewed. Additionally, he concedes that the announcements for two of the positions – the only two positions he discusses specifically – were withdrawn and no selection was made.